```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TCC Liquidating Corporation       :   CIVIL ACTION
F/T/D/B/A Triangle Container      :   NO. 05-1100
Corporation,                      :
et al.,                           :
     Plaintiffs,                  :
                                  :
     v.                           :
                                  :
Menasha Packaging Company, LLC,   :
     Defendant.                   :
```
                     **MEMORANDUM AND ORDER**

NEWCOMER, S.J.                                    August 15, 2005

    Presently before the Court is Defendant's Motion to Dismiss Count I of Plaintiff's Complaint, Plaintiffs' Response, and Defendant's Reply. For the reasons stated below, the Court grants Defendant's Motion.

**I.   BACKGROUND**

    Pursuant to the Asset Purchase Agreement ("the Agreement"), dated December 2, 2002, Defendant Menasha purchased substantially all of the assets of Plaintiff Triangle Liquidating Corporation. As a result, Menasha also assumed the obligations of the collective bargaining agreement between Triangle and Local 2-286 of the Paper Allied-Industrial, Chemical, and Energy Workers International Union ("the Union Agreement"). At the time of closing, Triangle was a contributing employer to certain welfare funds that benefitted unionized employees of Triangle. Because it was responsible for the Union Agreement, Menasha became obligated to make certain contributions to welfare funds for the

duration of the Union Agreement.

As part of the Agreement, Triangle agreed to indemnify Menasha for the remainder of the term of the Union Agreement if the yearly increases of the health and welfare benefits of its Union employees exceeded 15% per year.  See Agreement, § 9.6(d)(viii).  The parties defined this concept as "Excess Payment."  See Agreement § 9.6(viii)(C)(1).  Essentially, to the extent that the amount required to be paid by Menasha for the health and welfare benefits of its union employees exceeded a predetermined "Designated Amount," Triangle was required to pay Menasha the amount by which the actual amount paid exceeded the Designated Amount.  The adjustment is made by multiplying the stated Designated Amount for a given period by a fraction whose numerator "is the number of employees covered by the Union Agreement on the last day of such relevant period" and whose denominator is "the number of employees covered by the Union Agreement at the time of closing."

At the conclusion of the relevant period, Menasha reported the amount by which welfare fund contributions deviated from the Designated Amounts.  Triangle then became obligated to pay Menasha the amount of any contribution that exceeded the Designated Amount.  Menasha sent Triangle a notification letter in September of 2004, stating that the excess payment was $142,556.68, and sent Triangle another letter in February 2005

which said that the excess payment was $151,407.32.  Neither Triangle nor the Shareholders have paid Menasha either amount because there is a dispute over (1) the number of employees covered by the agreement at the time of closing, and (2) which payments should be included in the amount required to be paid.

**II.  LEGAL STANDARD**

When considering a motion to dismiss, the Court must accept as true all factual allegations in the complaint and construe all reasonable inferences to be drawn therefrom in a light most favorable to the plaintiff.  See Abdulhay v. Bethlehem Med. Arts, L.P., No. 03-CV-04347, 2004 U.S. Dist. LEXIS 5495, at *14 (E.D. Pa. Mar. 29, 2004).  A Rule 12(b)(6) motion should be granted if "it appears to a certainty that no relief could be granted under any set of facts which could be proved."  Id.  As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings.  See In re Burlington Coat Factory Sec. Lit., 114 F.3d 1410, 1426 (3d Cir. 1996); Pension Benefit Guar. Corp. v. White Consul. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993)(stating that the rationale underlying Rule 12(b)(6) requires "that a motion to dismiss be converted to a summary judgment motion if a court considers matters outside the pleadings").  This Court may examine the Agreement because Plaintiff has attached it to the complaint as an exhibit.  See United States v. Leuthe, No. 01-203, 2002 U.S.

Dist. LEXIS 4748, at *4 (E.D. Pa. Mar. 20, 2002)(stating that a court may consider documents appended or integral to the pleadings).

## III. DISCUSSION

This Court, sitting in Pennsylvania, must apply Pennsylvania's conflict of law rules to determine the substantive law to be used in this case. See Babn Techs. Corp. v. Bruno, No. 98-3409, 1998 U.S. Dist. LEXIS 14802, at * 9, 10 (E.D. Pa. July 24, 1998). Pennsylvania Courts have adopted § 187 of the Restatement (Second) of Conflict of Laws, which first requires the Court to ask whether the Parties' explicitly have chosen the relevant law. See id. "Pennsylvania courts generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them." Kruzits v. Okuma Mach. Tool, 40 F.3d 52, 55 (3d Cir. 1994). In this case it is undisputed that Pennsylvania law governs the Agreement. Agreement at § 11 ("This Agreement shall be governed by and construed under and in accordance with the laws of the Commonwealth of Pennsylvania."). As such, the Court will apply Pennsylvania contract law to the Parties' dispute.

The determination of whether a contract is ambiguous is a question of law for the Court to decide. Sanford Inv. Co., Inc. v. Ahlstrom Mach. Holdings, Inc., 198 F.3d 415, 421 (3d Cir. 1999). Under Pennsylvania law, "it is firmly settled that the

intent of the parties to the written contract is contained in the writing itself." Samuel Rappaport Family P'ship v. Meridian Bank, 657 A.2d 17, 21 (Pa. 1995).  When the language of a contract is clear, "the focus of interpretation is upon the terms of the agreement as manifestly expressed, rather than as, perhaps silently intended." Fitzpatrick v. Queen, No. 03-4318, 2005 U.S. Dist. LEXIS 9409, at *23 (E.D. Pa. May 16, 2005)(quoting Steuart v. McChesney, 444 A.2d 659 (Pa. 1982)).  The writing will be found ambiguous only if "it is reasonable or fairly susceptible to different constructions and is capable of being understood in more senses than one." Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc., 247 F.3d 79, 93 (3d Cir. 2001).  A contract is not ambiguous if a court can determine its meaning without any guide other than a knowledge of the simple facts on which its meaning depends.  Id.  In addition, "a contract is not rendered ambiguous by the mere fact that the parties do not agree on the proper construction." Id.  There are two disputes in the instant case, both of which relate to calculating Excess Payments: (1) whether 106 or 123 employees were covered by the Union Agreement at the time of Closing, and (2) whether the amount required to be paid by Menasha includes payments made by the Union employees themselves.

    A.   *Employees Covered by the Union Agreement*

    Plaintiffs ask the Court to declare that for the purposes of

calculating an Excess Payment, the correct number of Union employees covered under the Union Agreement at the time of closing was 106 employees, rather than 123 employees.[1] (Compl. at ¶ 29). In § 1 of the Agreement, "Definitions," it states that "Excess Payment shall have the meaning specified in § 9.6(d) of this Agreement."

Plaintiffs argue that Defendant is "stealing" the number 123 from § 9.6(d)(vii), which relates to Pension Withdrawal liability, and applying it improperly to the subsequent Health Benefits section, 9.6(d)(viii)(c)(1). However, § 9.6(d)(vii) expressly states that "for the purposes of clarification, 123 employees were covered by the Union Agreement at the time of closing." Agreement at § 9.6(d)(vii) . The same phrase - "covered by the Union Agreement at the time of closing" - is used in the next section to describe how to calculate Excess Payments. Agreement at § 9.6(d)(viii)(c). In describing Excess Payment calculations, the Agreement does not make any reference to the number of employees "on whose behalf the employer is required to pay Health Plan benefits under the Union Agreement." Id. In fact, there is no indication that the phrase "covered by the Agreement at the time of closing" has a meaning different from what it clearly says. Rather, it is reasonable that in a fully

---

[1] The basis for their position is their allegation that only the 106 employees who were employed for six months and who were beneficiaries of welfare funds at the time of closing should be utilized in the fraction to determine excess payments.

integrated document, a phrase in one paragraph within the
"Employees" section would retain its meaning in the adjacent
paragraph.  Agreement at § 15 (stating that "there are no
agreements or understandings between the parties other than those
set forth herein").  Plaintiff's Complaint on this count
therefore must be dismissed.

    *B. Payments Included in Amount Required to Be Paid*

Plaintiffs seek a declaration from the Court that, for the
purpose of calculating Excess Payments, only contributions to the
Welfare Funds that are made by Menasha itself, rather than those
made by employees, may be counted.  There is no such distinction
within the language of the Agreement.  Although section
9.6(d)(viii)(B) of the Asset Purchase Agreement states that
Triangle will indemnify Plaintiff for "any amount which Purchaser
is required to pay," in the following paragraph the language is
quite different.  Paragraph 9.6(d)(viii)(c)(1), which explains
how to calculate an Excess Payment, states that an Excess Payment
is "the excess of the amount (regardless of how characterized)
required to be paid in the aggregate."  Unlike in paragraph B,
the plain language of paragraph C does not specify whose payments
are to be included because "required to be paid" is not qualified
by "Purchaser."  The language does not suggest that employee
contributions do not count, unlike the prior paragraph.  The
Court is obligated to assume, therefore, that the Parties

intended this difference. As this paragraph, in context, is not ambiguous, the Court must grant Plaintiff's Motion.

**IV.  CONCLUSION**

For the reasons stated above, Defendant's Motion is granted. An appropriate Order follows.

S/ Clarence C. Newcomer
United States District Judge

```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TCC Liquidating Corporation        :    CIVIL ACTION
F/T/D/B/A Triangle Container       :    NO. 05-1100
Corporation,                       :
et al.,                            :
      Plaintiffs,                  :
                                   :
      v.                           :
                                   :
Menasha Packaging Company, LLC,    :
      Defendant.                   :
```

**O R D E R**

_____AND NOW, on this 15th  day of August, 2005, upon consideration of Defendant's Motion to Dismiss (Doc. 5), Plaintiffs' Response, and Defendant's Reply, it is hereby ORDERED that said Motion is GRANTED.  Count I of Plaintiffs' Complaint is DISMISSED.  It is further ORDERED that Defendant's Motion for Leave to File a Reply (Doc. 9) is GRANTED.

_____AND IT IS SO ORDERED.

                                        S/ Clarence C. Newcomer
                                        United States District Judge